**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **BENJAMIN BRYSON,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:13-cv-02805** |
| | § | |
| **FLUOR CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**BAKER HOSTETLER LLP**

Dennis P. Duffy
State Bar No. 06168900
Federal ID No. 10502
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: (713) 646-1364
Facsimile: (713) 751-1717
Email: dpduffy@bakerlaw.com

***ATTORNEY-IN-CHARGE*** FOR **DEFENDANT FLUOR ENTERPRISES, INC.,** INCORRECTLY IDENTIFIED AND SUED AS **FLUOR CORPORATION**

**OF COUNSEL:**

Michael J. Lombardino
State Bar No. 24070159
Federal ID No. 1580053
BAKER HOSTETLER LLP
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: (713) 276-1631
Facsimile: (713) 751-1717
Email: mlombardino@bakerlaw.com

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES .................................................................................................iii

I. NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II. STATEMENT OF THE ISSUES BEFORE THE COURT ....................................... 1

III. SUMMARY OF THE ARGUMENT ....................................................................... 1

IV. STATEMENT OF UNDISPUTED FACTS .............................................................. 2

    A.    FEI Hired Bryson in March 2012; Performance Issues Surfaced Shortly Thereafter. ......................................................................................................... 2

    B.    FEI Approved All Of Bryson's Requests For Intermittent FMLA (Even Though He Was Only Employed By FEI For 6 months), Approved All Of Bryson's Requests To Take Time Off Work, And Made All Reasonable Accommodations Requested............................................................................. 4

    C.    Bryson's Written Reprimand for Deficient Performance and Insubordination. ............................................................................................. 6

    D.    Because Bryson's Performance Deficiencies Continued Despite Having an Opportunity to Work on Two More Projects, Turner Decided to Terminate Bryson's Employment. ................................................................................... 8

V. ARGUMENT AND AUTHORITIES ....................................................................... 10

    A.    Summary Judgment Standard. ....................................................................... 10

    B.    FEI Is Entitled To Summary Judgment On Bryson's FMLA Interference Claim Because Bryson Was Not Eligible For FMLA Leave And Because FEI Approved All Intermittent Leave Bryson Requested...................................... 11

    C.    FEI Is Entitled To Summary Judgment On Bryson's Failure To Accommodate Claim Because, Even Assuming Bryson Was A Qualified Individual with A Disability (He Was Not), Bryson Admits FEI Accommodated All Of His Requests. ............................................................. 13

    D.    FEI Is Entitled To Summary Judgment On Bryson's FMLA And ADA Discrimination And Retaliation Claims............................................................ 16

        1.    Legal Standards For Bryson's Discrimination And Retaliation Claims. ..................................................................................................... 16

        2.    Most Of The Complained-of Allegations Are Not Adverse Employment Actions As A Matter of Law; Nor Has Bryson Identified Any Similarly-Situated Employee Who Replaced Him Or Was Treated More Favorably. ................................................................. 17

        3.    FEI Terminated Bryson for Legitimate, Nondiscriminatory Reasons And There Is No Evidence Of Pretext. ...................................................... 23

VI. CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agoh v. Hyatt Corp.*,
992 F. Supp.2d 722 (S.D. Tex. 2014) ..................................................................... 24

*Allen v. Babcock & Wilcox Tech. Servs*,
2013 WL 5570192 (N.D. Tex. Oct. 9, 2013) .......................................................... 15

*Allen v. Radio One of Texas II, L.L.C.*,
515 Fed. Appx. 295 (5th Cir. Feb. 26, 2013) ......................................................... 18

*Amsel v. Tex. Water Dev. Bd.*,
464 Fed. Appx. 395 (5th Cir. March 19, 2012) ...................................................... 16

*Aryain v. Wal-Mart Stores Texas LP*,
534 F.3d 473 (5th Cir. 2008) .................................................................................. 19

*Belcher v. Fluor Enterprises, Inc.*,
2013 WL 499858 (S.D. Tex. Feb. 8, 2013) ....................................... 18, 19, 20, 26

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ............................................................................................ 18, 19

*Butron v. Centerpoint Energy*,
2011 WL 2162238 (S.D. Tex. May 31, 2011) ........................................................ 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................... 1, 10

*Coleman v. Jason Pharmaceuticals*,
540 Fed. Appx. 302 (5th Cir. Sept. 17, 2013) ....................................................... 25

*Collins-Pearcy v. Mediterranean Shipping Co.*,
698 F. Supp.2d 730 (S.D. Tex. 2010) ..................................................................... 12

*Crossley v. CSC Applied Tech., L.L.C.*,
2014 WL 2119156 (5th Cir. May 22, 2014) ..................................................... 13, 15

*Cuellar v. Keppel Amfels, LLC*,
731 F.3d 342 (5th Cir. 2013) .................................................................................. 13

*EEOC v. Agro Distrib.*,
555 F.3d 462 (5th Cir. 2009) .................................................................................. 15

*Ellini v. Ameriprise Fin., Inc.*,
881 F. Supp. 2d 813 (S.D. Tex. 2012) .................................................................... 19

*Elsayed v. Univ. of Hou.*,
  2012 WL 2870699 (July 11, 2012) ................................................................. 12

*Fuming Wu v. Texas A&M Univ. Sys.*,
  2011 WL 6130921 (S.D. Tex. Dec. 8, 2011) ................................................... 24

*Griffin v. United Parcel Serv., Inc.*,
  661 F.3d 216 (5th Cir. 2011) ................................................................... 14, 15

*Grubb v. Sw. Airlines*,
  296 Fed. Appx. 383 (5th Cir. Oct. 10, 2008) ................................................. 13

*Grudger v. CITGO Petroleum Corp.*,
  2014 WL 2983321 (5th Cir. July 3, 2014) ..................................................... 12

*Gudger v. CITGO Petroleum Co.*,
  2013 WL 5526993 (S.D. Tex. Oct. 4, 2013) ................................................... 23

*Harrison v. Corrections Corp. of America*,
  476 Fed. Appx. 40 (5th Cir. May 9, 2012) ..................................................... 19

*Harville v. Texas A&M*,
  833 F. Supp.2d 645 (S.D. Tex. 2011) ............................................................ 12

*Hernandez v. Yellow Transp., Inc.*,
  670 F.3d 644 (5th Cir. 2012) ......................................................................... 12

*Hill v. New Alenco Windows, Ltd.*,
  716 F. Supp. 2d 582 (S.D. Tex. 2009) ........................................................... 19

*Holiday v. Commonwealth Brands, Inc.*,
  483 Fed. Appx. 917 (5th Cir. Aug. 13, 2012) ............................................... 25

*Johnson v. Parkwood Behav. Hlth. Sys*,
  551 Fed. Appx. 753 (5th Cir. Jan. 6, 2014) ................................................... 15

*Jumbo v. Rodrigues*,
  2013 WL 5703628 (S.D. Tex. Oct. 18, 2013) ........................................... 18, 21

*King v. Louisiana*,
  294 Fed. Appx. 77 (5th Cir. Sept. 23, 2008) ................................................. 18

*Lanier v. Univ. of Tex. Sw. Med. Ctr.*,
  527 Fed. Appx. 312 (5th Cir. Jun. 12, 2013) ................................................. 11

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) ......................................................................... 11

iv

*Lopez v. Lone Star Beef Processors. LP*,
145 Fed. Appx. 473 (5th Cir. Aug. 19, 2005) ........................................................ 11

*Luera v. Convergys Customer Mgmt. Grp., Inc.*,
2013 WL 6047563 (S.D. Tex. Nov. 14, 2013) ...................................................... 16

*Lushute v. La., Dep't of Soc. Servs.*,
2012 WL 1889684 (5th Cir. May 25, 2012) ........................................................ 18

*McCoy v. City of Shreveport*,
492 F.3d 551 (5th Cir. 2007) .............................................................................. 18

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ............................................................................................ 16

*Mickey v. Texas Co-Op Extension*,
265 Fed. Appx. 177 (5th Cir. Feb. 6, 2008) ........................................................ 24

*Munoz v. Seton Healthcare, Inc.*,
557 Fed. Appx. 314 (5th Cir. Feb. 18, 2014) ...................................................... 20

*Nadeau v. Echostar*,
2013 WL 5874279 (W.D. Tex. Oct. 30, 2013) ..................................................... 14

*Owens v. Calhoun County School Dist.*,
546 Fed. Appx. 445 (5th Cir. Oct. 8, 2013) ........................................................ 17

*Paris v. Sanderson Farms, Inc.*,
542 Fed. Appx. 370 (5th Cir. Oct. 18, 2013) ...................................................... 16

*Parker v. Pulte Homes of Texas, L.P.*,
2011 WL 767182 (S.D. Tex. Feb. 25, 2011) ........................................................ 14

*Ragsdale v. Wolverine World Wide, Inc.*,
535 U.S. 81 (2002) .............................................................................................. 13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ............................................................................................ 17

*Roberson v. Alltel Info. Servs.*,
373 F.3d 647 (5th Cir. 2004) .............................................................................. 21

*Roberts v. Unitrin Specialty Lines Ins. Co.*,
405 Fed. Appx. 874 (5th Cir. Dec. 21, 2010) ...................................................... 16

*Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*,
438 Fed. Appx. 343 (5th Cir. Aug. 22, 2011) ...................................................... 17

*Smith v. Lattimore Materials Co.*,
  287 F.Supp.2d 667 (E.D. Tex. 2003) ................................................................. 14

*Stults v. Conoco, Inc.*,
  76 F.3d 651 (5th Cir. 1996) ................................................................................. 10

*Sweeney v. Dinner's Served, Inc.*,
  2010 WL 4853801 (S.D. Tex. Nov. 22, 2010) ................................................... 11

*Taylor v. Principal Fin. Grp., Inc.*,
  93 F.3d 155 (5th Cir. 1996) ................................................................................. 15

*Tex. Dep't of Cmty. Affairs v. Burdine*,
  450 U.S. 248 (1981) ............................................................................................. 17

*Wallace v. Methodist Hosp. Sys.*,
  271 F.3d 212 (5th Cir. 2001) ............................................................................... 17

*Williams v. Lyondell-Citgo Refining Co.*,
  2005 WL 1562422 (S.D. Tex. July 1, 2005), *affirmed,* 247 Fed. Appx. 466 (5th
  Cir. June 11, 2007) ............................................................................................... 12

*Wilson v. Exxon Mobil Corp.*,
  2014 WL 3378323 (5th Cir. July 11, 2014) ....................................................... 22

**Statutes**

29 U.S.C. § 2611(2)(A) ............................................................................................ 11

42 U.S.C. § 12111(8) ............................................................................................... 14

**Other Authorities**

29 C.F.R. § 825.104(c)(2) ........................................................................................ 11

29 C.F.R. § 825.106 ................................................................................................. 11

Fed. R. Civ. P. 56(c) ................................................................................................ 10

## I.      <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Plaintiff Benjamin Bryson ("Bryson") filed this lawsuit in Texas state court, alleging that Fluor Enterprises, Inc. ("FEI"), incorrectly identified and sued as Fluor Corporation, interfered with Bryson's rights under the Family and Medical Leave Act ("FMLA"), failed to accommodate his alleged disability in violation of the Americans with Disabilities Act ("ADA"), discriminated against him through various alleged adverse employment actions, and retaliated against him for taking FMLA leave and making complaints of discrimination. FEI timely removed this action on September 23, 2013. The discovery period closed on July 30, 2014. Docket call is on November 3, 2014.

## II.      <u>STATEMENT OF THE ISSUES BEFORE THE COURT</u>

The issues to be ruled on by the Court by this Motion are whether FEI interfered with Plaintiff's FMLA rights, whether FEI failed to accommodate Bryson's alleged disability, and whether FEI discriminated or retaliated against Bryson. The standard for review is the familiar standard under Rule 56:  FEI must establish that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

## III.      <u>SUMMARY OF THE ARGUMENT</u>

FEI is entitled to summary judgment on Bryson's FMLA interference claim because: (1) Bryson was not eligible for FMLA leave because he was employed by FEI for less than 12 months; (2) FEI nevertheless approved <u>all</u> of his requests for intermittent leave; and (3) Bryson was never prevented from taking time off for flare-ups or to attend doctor's appointments. Similarly, FEI is entitled to summary judgment on Bryson's ADA accommodation claim because: (1) Bryson was not disabled within the meaning of the ADA because his gastric condition was episodic and did not substantially limit any of his major life activities/bodily functions; and (2) the only accommodation Bryson requested for his condition was intermittent

time off, which FEI granted. Finally, FEI is entitled to summary judgment on Bryson's discrimination and retaliation claims because Bryson has no evidence, direct or circumstantial, that he was subjected to any alleged adverse employment decisions *because of* his disability or *because* he took FMLA leave. To the contrary, many of the alleged actions are not adverse employment actions as a matter of law and, in any event, there is no evidence that Bryson was treated less favorably than, or replaced by, similarly-situated employees. The evidence establishes beyond cavil that FEI reprimanded Bryson and later terminated his employment for legitimate nondiscriminatory reasons and there is no evidence of pretext. Similarly, Bryson's retaliation claims fail because there is no competent evidence establishing a causal connection between any of his alleged protected activities and any materially adverse employment actions. Even if Bryson had not engaged in alleged protected activity, he still would have been subject to the same adverse employment actions, which were taken for legitimate, nonretaliatory reasons.

## IV.    STATEMENT OF UNDISPUTED FACTS

**A.    FEI Hired Bryson in March 2012; Performance Issues Surfaced Shortly Thereafter.**

FEI hired Bryson on March 5, 2012 to work as a Process Engineer[1] at its Sugar Land, Texas location. *Declaration of James Turner* ("*Turner Dec.*") (Ex. 1) ¶ 4. Upon his hire, FEI credited Bryson for the years of service that he had worked for TRS Staffing Solutions, Inc. ("TRS"), a related but separate employer, for purposes of administering FEI's Time Off With Pay ("TOWP") policy. *Declaration of Yolanda Moultrie* ("*Moultrie Dec.*") (Ex. 2) ¶ 3; *Deposition of Benjamin Bryson* ("*Pl. Dep.*") (Ex. 3) 20:6-24, 25:8-24.[2] James Turner, Director of FEI's Process Technology & Engineering Department ("Turner"), assigned Bryson to work on

---

[1] Process Engineers are considered the "frontrunners" in the engineering process:  once FEI is awarded a new project, Process Engineers design the scope of the work so that engineers in other disciplines (*e.g.*, mechanical engineers) will know what needs to be done on the project. *Turner Dec.* ¶ 3.

[2] It is undisputed that FEI and TRS are separate employers and that Bryson's employment with TRS and FEI was successive—not joint or concurrent.  *Pl. Dep.* 20:6-24; 24:6-25:7; *Moultrie Dec.* ¶ 3.

the "Sadara Project," where he was supervised by Greg Pierson, Process Engineering manager, who in turn reported to Soorya Ellickal, Process Director. *Turner Dec.* ¶ 4; *Pl. Dep.* 87:2-10. Soon thereafter (but, well before Bryson first applied for FMLA leave), Turner began receiving feedback from Bryson's managers who reported that Bryson was extremely unproductive, took "too long" to finish tasks, and was unable to perform typical engineering tasks expected of Process Engineers. *Turner Dec.* ¶ 5; *Pl. Dep.* 198:11-199:6. In June/July 2012 (again, before Bryson first applied for FMLA), due to Bryson's performance deficiencies, Ellickal decided to move Bryson to another area of the Sadara Project, where he was supervised by Praful N. Shah, Principal Process Engineer ("Shah"). *Turner Dec.* ¶ 5; *Pl. Dep.* 103:10-21. Shortly thereafter, Turner received similar feedback from Shah—that Bryson was unproductive, took a long time to complete simple tasks, had difficulty implementing instructions, and would frequently have to redo his work despite repeatedly asking questions and obtaining instructions. *Turner Dec.* ¶ 5. Shah reported noticing what would become a reoccurring theme among Bryson's supervisors: that Bryson appeared to lack the fundamental technical knowledge and skills expected of a junior Process Engineer of Bryson's level and experience. *Turner Dec.* ¶ 5. Thus, when FEI began reducing the number of Process Engineers at the Sadara Project, Shah requested that Bryson be the first Process Engineer released from the Sadara Project due to his deficient performance. *Id.*[3]

On September 21, 2012 (still before Bryson applied for FMLA), Turner transferred Bryson to the Dow Alliance Project, where he was supervised by Irene Quiroz, Area Process Lead ("Quiroz") and Clay Coleman, Lead Process Engineer ("Coleman"), who in turn reported to Bach Williams, Process Director ("Williams"). *Turner Dec.* ¶ 6; *Pl. Dep.* 32:10-14, 39:3-8,

---

[3] Despite Bryson's performance issues, his supervisors on the Sadara Project decided not to formally reprimand Bryson because they wanted to encourage him to improve his performance. *Turner Dec.* ¶ 5.

40:7-14, 44:15-20, 92:15-93:23, 236:7-14.[4] Turner transferred Bryson to the Dow Alliance Project because: (1) Shah asked that Bryson be the first Process Engineer removed from the Sadara Project because Shah believed Bryson was the lowest performing Process Engineer; (2) Turner wanted to give Bryson an opportunity to work for supervisors who had a track record of developing underperforming and inexperienced engineers; and (3) Turner considered the Dow Alliance Project to be less demanding than the Sadara Project. *Turner Dec.* ¶ 6.

Shortly after the transfer, Turner began receiving similar feedback from Quiroz, Coleman and Williams—that Bryson was inefficient, appeared unable to follow instructions even after obtaining repeated clarification, would make frequent errors, often requiring other Process Engineers to spend time explaining to Bryson how to fix his work or sometimes re-doing his work altogether, and exhibited a general lack of understanding a Process Engineer's role in a large-scale construction project vis-à-vis engineers in other disciplines. *Turner Dec.* ¶ 7.

**B.**   **FEI Approved All Of Bryson's Requests For Intermittent FMLA (Even Though He Was Only Employed By FEI For 6 months), Approved All Of Bryson's Requests To Take Time Off Work, And Made All Reasonable Accommodations Requested.**

On October 3, 2012 (*i.e.*, 12 days after his transfer to the Dow Alliance Project), Bryson applied for intermittent FMLA leave due to a medical condition. *Pl. Dep.* 159:23-160:10; *Moultrie Dec.* ¶ 4; *Ex. 6.* In support, Bryson submitted a Certification of Healthcare Provider from his doctor stating that Bryson had periodic flare-ups of gastric and abdominal pain that could interfere with his ability to work "during flare-ups of pain". *Ex. 7*, pp. 2-3; *Pl. Dep.* 160:4-23; *Moultrie Dec.* ¶ 5. On October 15, 2012, FEI approved Bryson's request for intermittent leave for the period of August 1, 2012 to November 1, 2012. *Pl. Dep.* 164:12-24; *Moultrie Dec.* ¶ 6; *Ex. 8.* After receiving notice of Bryson's approval for intermittent FMLA, Turner instructed

---

[4] Bryson's job title, pay and core job function remained the same after his transfer to the Dow Alliance Project. *Turner Dec.* ¶ 6.

Bryson's supervisors to allow Bryson to take off time as needed, to adjust his work by giving him assignments that were not schedule-critical, and to only evaluate Bryson's performance and productivity based on the actual time he spent at work. *Turner Dec.* ¶ 8.

On November 1, 2012 (*after* he received the written reprimand discussed in Section IV.C., *infra*), Bryson emailed Turner and Yolanda Moultrie, Senior Human Resources Specialist asking for assistance due to his medical condition. *Moultrie Dec.* ¶ 10; *Ex. 9*. In response, Moultrie promptly emailed Bryson additional FMLA and accommodation paperwork, and scheduled a meeting with Bryson for November 5, 2012 to discuss the matter. *Moultrie Dec.* ¶ 10; *Ex. 10*. At that meeting (also attended by Turner), Moultrie informed Bryson that because he was approved for FMLA leave, he was free to use the time to attend doctor's appointments, which FEI believed fully addressed any accommodation he needed; however, during the time he was at work he was still responsible for completing his assigned work. *Pl. Dep.* 214:16-215:4; *Moultrie Dec.* ¶ 11*; Ex. 11*.

On November 7, 2012, Bryson submitted a medical certification completed by his doctor stating: Bryson had "chronic severe gastritis" that would likely last "several months" (*Pl. Dep.* 140:23-141:23, 142:15-143:1; *Ex. 12*); the condition was "episodic" rather than a continuing period of incapacity; Bryson was not "substantially limited in any major life activities/bodily function;" Bryson could "work without restrictions as his symptoms allow;" and notwithstanding the condition, Bryson was able to perform all of the functions of his position. *Id*. On November 20, 2012, FEI approved Bryson's request for a *second* period of intermittent leave from November 2, 2012 to November 2, 2013. *Pl. Dep.* 167:5-12; *Moultrie Dec.* ¶ 13; *Ex. 4*.

Although Bryson claims that FEI interfered with his rights under the FMLA, it is undisputed that (1) FEI approved all of Bryson's requests for FMLA leave (*Pl. Dep.* 160:7-10,

162:20-22); (2) whenever Bryson needed time off, he was allowed to take it (*Pl. Dep.* 151:10-12); and, (3) Bryson was always permitted to take time off for doctor's visits or due to flare-ups (*Pl. Dep.* 151:13-18, 152:5-8, 163:16-21). Similarly, although Bryson claims that FEI failed to accommodate his alleged disability, it is undisputed that: (1) the only accommodation Bryson requested for his medical condition was to be given time off as needed (*Pl. Dep.* 147:2-10, 157:4-158:2); (2) FEI granted that accommodation (*Pl. Dep.* 151:19-152:12); (3) FEI never refused Bryson any time off when he requested it (*Pl. Dep.* 159:5-8); and (4) there was no other accommodation Bryson requested that FEI did not provide (*Pl. Dep.* 205:23-206:6).

**C.    Bryson's Written Reprimand for Deficient Performance and Insubordination.**

Following approval of intermittent FMLA leave, Bryson's supervisors on the Dow Alliance Project continued to observe the same deficiencies in Bryson's performance that had been reported to Turner before Bryson had requested time off. *Turner Dec.*¶ 8. Turner also received a report that on October 23, 2012, Bryson yelled at Coleman (his supervisor on the Dow Alliance Project) during a performance coaching session in an inappropriate and insubordinate manner (and in the presence of an FEI client and Bryson's coworkers). *Turner Dec.* ¶ 9; *Ex. 13*. Therefore, on October 26, 2012, after consulting with Human Resources, Turner issued Bryson a written reprimand for failing to improve his performance, based on multiple reports from his supervisors, and for insubordination. *Pl. Dep.* 173:16-174:14; *Turner Dec.* ¶ 9; *Ex. 13*.

On October 31, 2012, Bryson emailed Moultrie (HR Specialist) a "final" rebuttal to the written reprimand. *Pl. Dep.* 228:22-229:7; *Ex. 14*. In it, Bryson never denied having performance deficiencies. *Ex. 14*. Instead, Bryson blamed others and gave excuses for his inadequate performance. *Id.*, pp. 2-5.[5] Although Bryson claimed in the rebuttal that he had a medical

---

[5] *See, e.g., Pl. Dep. 229:16-230:25* ("I understand their English but I don't understand the English when sentences are put together")*; Ex. 14*, pp. 4 (". . .I have never been on a project in this phase of estimation. . . .").

condition that helped contribute to the situation (*Ex 14*, p. 3), in his sworn deposition testimony, Bryson admitted that <u>none</u> of his medical conditions caused his poor performance (*Pl. Dep.* 169:3-9). Bryson also stated in the rebuttal that he felt "harassed" for having a medical condition because Coleman "would not accept [his] [written] doctors excuses," and because during a meeting on October 10, 2012, Coleman asked Bryson "is this thing with Human Resources over with?"[6] *Ex. 14,* p. 3. During his deposition, Bryson disputed raising his voice at Coleman (*Pl. Dep.* 179:15-180:7), claimed the reprimand was "exaggerated" (*Pl. Dep.* 177:10-178:8), and claimed Coleman wrote the reprimand (and Turner signed it) due to his alleged medical condition or for taking FMLA leave (*Pl. Dep.* 47:9-18, 174:22-177:17).[7] However, the written reprimand does not mention or even reference Bryson's medical condition or his absences from work. *Ex. 13*. Bryson admits in the rebuttal that he had a "disagreement [with] Clay [Coleman]." *Id.*, p. 2. More importantly, Bryson admits: (1) he has no facts to support his claim that Coleman wrote Bryson up *because of* his disability or *because of* his request for FMLA leave, as opposed to any other reason (*Pl. Dep.* 48:7-12); (2) that Coleman honestly believed Bryson's performance on the Dow Alliance Project was "nonexistent" (*Pl. Dep.* 48:13-49:22, 177:10-17, 186:5-14); (3) Bryson has no basis upon which to dispute Turner's honest belief that Bryson was performing poorly and that he had been insubordinate to Coleman (*Pl. Dep.* 189:11-190:8); and (4) from Turner's and Coleman's perspective, Bryson's performance issues and conduct were so

---

[6] Moultrie (HR Specialist) promptly investigated Bryson's allegation of "harassment" and, after speaking with both Bryson and Coleman, concluded that Coleman did not want to see the doctor's excuses because he did not want to know any details about Bryson's medical condition. *Moultrie Dec.* ¶ 9. Moultrie also concluded that Coleman's question to Bryson about "HR" was in the context of Coleman asking Bryson if there was anything he could do to help Bryson with his "HR issues." *Id*. In any event, Bryson was transferred from the project less than two weeks later and there were no further complaints received by FEI about any alleged comments from Coleman to Bryson after that date. *Id*.

[7] Bryson also claimed his supervisors' instructions lacked clarity or turned out not to be true (*Pl. Dep.* 230:9-25, 231:1-7). However, Bryson admits that he did not believe the supervisors were *intentionally* trying to give unclear or wrong instructions because of his alleged disability or his requests for FMLA leave (*Pl. Dep.* 231:1-7, 109:22-110:4). And, as he admitted, all Process Engineers had to deal with changing instructions. *Pl. Dep.* 199:22-200:6.

serious that his employment may be terminated if he did not improve his performance and/or if he engaged in further acts of insubordination (*Pl. Dep.* 180:8-15, 181:17-24; *Ex. 13*, p. 1).

**D.     Because Bryson's Performance Deficiencies Continued Despite Having an Opportunity to Work on Two More Projects, Turner Decided to Terminate Bryson's Employment.**

On November 16, 2012, Turner transferred Bryson to the BP-H Toledo Project, where he was supervised by Tek Sutikno, Lead Process Engineer ("Sutikno"), who reported to Darren Sanders, Process Director ("Sanders"). *Turner Dec.* ¶ 10; *Pl. Dep.* 100:2-11, 112:15-21. Turner transferred Bryson to the BP-H Toledo Project because: (1) due to Bryson's ongoing performance deficiencies, both FEI's client and Bryson's supervisors wanted him removed from the Dow Alliance Project (*Pl. Dep.* 215:5-216:24); (2) Turner wanted to give Bryson another opportunity to work with supervisors who had a strong track record of training and developing underperforming and inexperienced engineers (but no prior experience with Bryson); and (3) Turner wanted to ensure Bryson had a fair opportunity to improve his performance. *Turner Dec.* ¶ 10.[8] After his transfer, Bryson had no further contact with Coleman. *Id.* However, Turner began receiving similar feedback given by Bryson's previous supervisors. For example, over the series of two written assessments on Bryson's performance, Sutikno stated, *inter alia*, that Bryson's work lacked general clarity and required technical corrections and explanation, he did not have the necessary technical understanding of pump process hydraulics, and that Bryson required extensive training or coaching to perform productively in the same assignment area. *Pl. Dep.* 221:22-222:8, 223:5-224:7; *Turner Dec.* ¶ 11; *Exs. 15, 16*.

Despite Sutikno's negative assessments, Turner decided to give Bryson one last opportunity to improve his performance. Therefore, Turner transferred Bryson to the Reliance

---

[8] Bryson's job title, pay and core job function remained the same after his transfer to the BP-H Toledo Project. *Turner Dec.* ¶ 10.

Project, where he was supervised by Debra Fry, Process Director ("Fry").[9] *Turner Dec.* ¶ 12; *Pl. Dep.* 56:12-19, 121:20-122:1.[10] Turner transferred Bryson to the Reliance Project because: (1) Bryson performed deficiently on the Sadara Project, the Dow Alliance Project and the BP-H Toledo Project—and his supervisors on those projects did not want him transferred back; (2) Turner wanted to give Bryson another opportunity to work with supervisors who had a track record for developing underperforming engineers (but no prior experience with Bryson); and (3) Turner wanted to give Bryson one last opportunity to improve his performance. *Turner Dec.* ¶ 12.[11] But, Turner received similar written feedback from Fry: the amount of supervision and instruction Bryson needed to perform even elementary tasks led her to question the quality of education he received for his Bachelor's Degree (*Pl. Dep.* 244:4-8, 245:16-23; *Ex. 17*).

Therefore, on January 30, 2012, after consultation with Human Resources, Turner decided to terminate Bryson's employment. *Turner Dec.* ¶ 13; *Pl. Dep.* 124:24-125:17, 177:10-15, 241:8-15. Turner made the decision to terminate Bryson's employment because: (1) Turner received consistently negative feedback about Bryson's performance from multiple supervisors on multiple projects; (2) despite having several opportunities to work on different projects with different supervisors who had a strong track record for developing inexperienced and underperforming engineers, Bryson failed to improve his performance deficiencies; (3) there was no other available project to which Bryson could be assigned; and (4) based on feedback Turner

---

[9] Prior to his transfer, FEI explored the possibility of assigning Bryson to help distribute materials on the Centennial Book Project, but that work never materialized. *Moultrie Dec.* ¶ 14.

[10] Bryson's job title, pay and core job function remained the same after his transfer to the Reliance Project. *Turner Dec.* ¶ 12.

[11] Bryson claims that in November 2012, he was placed on "overhead status" (*Pl. Am. Pet.* 5; *Pl. Dep.* 257:8-259:23). No such thing as "overhead status" exists at FEI. *Turner Dec.* ¶ 14. However, due to his poor performance, Bryson was assigned to tasks that were not billed to FEI's client. *Id.* Bryson's job title, pay and core job function remained the same regardless of whether Bryson's work was billed to the client (*i.e.*, regardless of whether his work generated revenue for FEI). *Id.* Bryson was assigned non-billable tasks on those occasions because: (1) there was no available billable to tasks to which he could be assigned at that time; and (2) due to his performance issues, project management was not confident that the client would pay for Bryson's work if it was billed to the client. *Id.*

received, his personal engineering experience, and his interactions with Bryson over the previous several months, Turner honestly believed Bryson lacked the technical knowledge, skills and competence to be an effective Process Engineer at FEI. *Id.*

Bryson claims that Turner should not have relied on feedback he received from Bryson's supervisors because they were biased and Turner had never worked directly with Bryson to see his work. *Pl. Dep.* 126:21-127:11. However, Bryson admits he has no facts to support his belief that Turner was motivated by a desire to discriminate against him because of his disability or his requests for FMLA leave. *Pl. Dep.* 128:23-129:2. Bryson admits he has no basis to dispute Turner's honest belief that Bryson's performance warranted termination. *Pl. Dep.* 127:23-128:3. And Bryson admits he has no basis to believe the performance feedback Turner relied on was in any way biased due to his disability or his requests for FMLA. *Pl. Dep.* 128:4-131:3.[12]

## V.    ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Standard.

Summary judgment is proper when the evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once FEI has made an initial showing of the absence of a genuine issue of material fact, Bryson must "go beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial." *Id.*, at 324; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996). To meet this burden, Bryson must "'identify specific evidence in the record and articulate the precise manner in which that evidence support[s] [Plaintiff's] claims.'" *Stults*, 76 F.3d at 656. Bryson's burden is "not

---

[12] Although Bryson disagrees that he had any performance issues (*Pl. Dep.* 55:22-25, 89:23-90:5, 104:6-106:19, 222:5-23, 223:19-224:7), Bryson admits he does not know, and thus has no competent basis for disputing his supervisors' assessment of his performance. *Pl. Dep.* 54:25-56:6 (Ellickal); *Pl. Dep.* 88:24-90:5 (Pierson), *Pl. Dep.* 97:6-17, 237:10-19 (Quiroz); *Pl Dep.* 103:3-9 (Sanders); *Pl. Dep.* 103:10-104:5 and 106:20-107:22 (Shah); *Pl. Dep.* 186:15-20 (Williams); *Pl. Dep.* 224:8-16 (Sutikno); and *Pl. Dep.* 246:11-15 (Fry).

satisfied with 'some metaphysical doubt as to the material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.**     **FEI Is Entitled To Summary Judgment On Bryson's FMLA Interference Claim Because Bryson Was Not Eligible For FMLA Leave And Because FEI Approved All Intermittent Leave Bryson Requested.**

Bryson's claim that FEI interfered his rights under the FMLA (*Pl. Am. Pet.*, p. 7) fails because his own deposition admissions preclude him from establishing that he was an "eligible employee" under the FMLA (*i.e.,* element (1) of his *prima facie* case), or that FEI denied him any benefits he was entitled to under the FMLA (*i.e.,* element (5) of his *prima facie* case).[13]

As a threshold matter, Bryson was not an "eligible employee" under the FMLA because he had not been employed by FEI for at least 12 months, either at the time of his requests for FMLA leave or at the time of his termination. *See* 29 U.S.C. § 2611(2)(A). FEI hired Bryson on March 5, 2012, and subsequently terminated him for poor performance on January 30, 2013 (just over **ten months** later). *Pl. Am. Pet.*, p. 1; *Turner Dec. ¶¶ 4, 13*; *Pl. Dep.* 124:24-125:17, 241:8-15.[14] As a matter of law, Bryson was not an "eligible employee" for purposes of the FMLA. *Lopez v. Lone Star Beef Processors. LP*, 145 Fed. Appx. 473, 474-75 (5th Cir. Aug. 19, 2005) (affirming dismissal of FMLA claims because Plaintiff employed for less than 12 months); *Sweeney v. Dinner's Served, Inc.*, 2010 WL 4853801, at *3 (S.D. Tex. Nov. 22, 2010) (Rosenthal, J.) (granting summary judgment:  the FMLA does not protect employees who are

---

[13] To make a *prima facie* FMLA interference case, Bryson must establish: (1) he was an eligible employee, (2) FEI was subject to the FMLA's requirements, (3) he was entitled to leave, (4) he gave proper notice of his intention to take FMLA leave, and (5) FEI denied Bryson benefits he was entitled to under the FMLA. *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. Jun. 12, 2013).

[14] Although FEI gratuitously credited Plaintiff for the years of service that he worked for TRS, it is undisputed that Plaintiff's employment with TRS and FEI was successive—not joint or concurrent (*Pl. Dep.* 20:6-24; 24:6-25:7; *Moultrie Dec.* ¶ 3). *See* 29 C.F.R. § 825.106. Similarly, both TRS and FEI maintain separate management, operations and finances; and, there is no centralized control of labor relations nor are there any other significant indicators of an integrated employer relationship (*See Moultrie* Dec. ¶ 3).  *See* 29 C.F.R. § 825.104(c)(2).

ineligible for its protections).[15]

Assuming *arguendo* that Bryson could establish he was eligible for FMLA leave, his interference claim nevertheless fails because Bryson cannot identify any rights or benefits he would have been entitled to under the FMLA that FEI interfered with, restrained or denied. *Elsayed v. Univ. of Hou.*, 2012 WL 2870699, at *3 (July 11, 2012) (Rosenthal, J.). Thus, it is undisputed that (1) FEI approved <u>all</u> of Bryson's requests for FMLA leave (*Pl. Dep.* 160:7-10, 162:20-22); (2) whenever Bryson needed time off, he was allowed to take it (*Pl. Dep.* 151:10-12); and, (3) Bryson was always permitted to take time off for doctor's visits or due to flare-ups (*Pl. Dep.* 151:13-18, 152:5-8, 163:16-21). Because Bryson cannot show <u>any</u> denial of his rights, he has no viable FMLA interference claim. *Harville v. Texas A&M*, 833 F.Supp.2d 645, 656 (S.D. Tex. 2011) (Hoyt, J) (granting summary judgment because plaintiff unable to show denial of FMLA leave notwithstanding that she had not exhausted all her intermittent leave).[16]

Even if Bryson could show that FEI interfered with his FMLA rights, Bryson's claim

---

[15] The fact that FEI approved Bryson's request for FMLA leave, despite his ineligibility is irrelevant since Bryson cannot demonstrate detrimental reliance on any representation by FEI, such as being disciplined for taking a mistakenly-approved leave of absence. *See, e.g., Collins-Pearcy v. Mediterranean Shipping Co.*, 698 F.Supp.2d 730, 740-41 (S.D. Tex. 2010) (Atlas, J.).

[16] Although Bryson's claims he was "harassed" due to his request for FMLA leave (*Pl. Am. Pet.*, p.7 ¶ 5), the sole basis for his claim is his complaint that Coleman "would not accept [Bryson's] [written] doctors excuses," and that during a meeting on October 10, 2012, Coleman asked Bryson "is this thing with Human Resources over with?" (*Ex. 14, p.3*). Claims of discrimination and harassment by employees attempting to exercise FMLA rights are analyzed under the framework for pursuing FMLA interference claims. *Williams v. Lyondell-Citgo Refining Co.*, 2005 WL 1562422, at *4 (S.D. Tex. July 1, 2005) (Hoyt, J.), *affirmed*, 247 Fed. Appx. 466 (5th Cir. June 11, 2007). Coleman's alleged conduct is not probative of an FMLA interference claim because Bryson does not have a viable FMLA interference claim. Even assuming Bryson could pursue a separate harassment claim under the FMLA, his claim would still fail because Coleman's isolated comments are not sufficient to demonstrate a work environment "permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of [his] employment." *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Grudger v. CITGO Petroleum Corp.*, 2014 WL 2983321, at *4 (5th Cir. July 3, 2014) (affirming summary judgment: "A single comment generally will not suffice to survive summary judgment.").

Moreover, Moultrie (FEI's HR Specialist) promptly investigated Bryson's complaints and concluded that Coleman did not want to see the doctor's excuses because he did not want to know any details about Bryson's alleged medical condition. *Moultrie Dec.* ¶ 9. Moultrie also concluded that Coleman's question to Bryson about "HR" was in the context of Coleman asking Bryson if there was anything he could do to help Bryson with his "HR issues." *Id.* In any event, Bryson was transferred off the project less than 2 weeks later and there were no further complaints received by FEI about any alleged comments from Coleman to Bryson after that date (*Moultrie Dec.* ¶ 9). *See Grudger*, 2014 WL 2983321, at *3-4.

would still fail because he is unable to show how he was prejudiced by any alleged denial. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) (to prove an FMLA interference claim must show a real impairment of his rights *and resulting prejudice*). Bryson's request and approval for a *second* period of FMLA leave (*Pl. Dep.* 167:5-12; *Moultrie Dec.* ¶ 13; *Ex. 4*) precludes any claim of prejudice. *See, e.g., Cuellar v. Keppel Amfels, LLC*, 731 F.3d 342, 347 (5th Cir. 2013).[17] Thus, FEI is entitled to summary judgment on Plaintiff's interference claim.

## C.    FEI Is Entitled To Summary Judgment On Bryson's Failure To Accommodate Claim Because, Even Assuming Bryson Was A Qualified Individual with A Disability (He Was Not), Bryson Admits FEI Accommodated All Of His Requests.

Bryson's claim that FEI failed to accommodate his alleged disability (*Pl. Am. Pet.*, pp. 5-6) also fails because, assuming *arguendo* Bryson was a qualified individual with a "disability" (he was not), it is undisputed that FEI accommodated all of Bryson's requests for accommodation based on any limitations known to FEI. Bryson's own deposition admissions together with the record evidence preclude him from establishing that he was a qualified individual with a "disability" (*i.e.*, element (1) of his *prima facie* case) or that FEI failed to provide any requested accommodations based on a known limitation (*i.e.*, element (3) of his *prima facie* case).[18]

As a threshold matter, Bryson's accommodation claim fails because he was not a

---

[17] Any argument that FEI interfered with Bryson's reinstatement rights by terminating him during the period he had been approved to take intermittent leave has no merit as a matter of law. An employee who is granted FMLA leave has no greater rights than an employee who was not granted FMLA leave. *Butron v. Centerpoint Energy,* 2011 WL 2162238, at *8 (S.D. Tex. May 31, 2011) (Ellison, J.) (an employer may lawfully dismiss an employee—preventing him from exercising his statutory rights to FMLA leave or reinstatement—if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.). To be sure, FMLA does not excuse poor performance by an employee even if the problems are caused by the condition for which FMLA leave is taken. *Id.* Bryson's FMLA rights were extinguished upon his termination for legitimate, nondiscriminatory and nonretaliatory reasons. *See* discussion at Section IV.D.4., *infra*, regarding Turner's legitimate, nondiscriminatory and nonretaliatory reasons for terminating Bryson; *see also Grubb v. Sw. Airlines*, 296 Fed. Appx 383, 391 (5th Cir. Oct. 10, 2008) (summary judgment proper: termination for legitimate reasons extinguishes right to FMLA leave).

[18] To make a *prima facie* ADA failure to accommodate case, Bryson must establish he: (1) is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by FEI; and (3) FEI failed to make "reasonable accommodations" for such known limitations. *Crossley v. CSC Applied Tech., L.L.C.*, 2014 WL 2119156, at *2 (5th Cir. May 22, 2014).

qualified individual with a "disability" under the ADA. The medical certification completed by Bryson's doctor certified that: (1) Bryson had "chronic severe gastritis" that would likely last "several months" (*Pl. Dep.* 140:23-141:23, 142:15-143:1; *Ex. 12*); (2) the condition was "episodic" rather than a continuing period of incapacity; (3) Bryson was not "substantially limited in any major life activities/bodily function;" (4) Bryson could "work without restrictions as his symptoms allow;" and (5) notwithstanding the condition, Bryson was able to perform all of the functions of his position. *Id*. In addition, Bryson admits that he never submitted any paperwork to FEI that stated, or even suggested, that there was any limitation on Bryson's ability to perform work when he was not experiencing flare-ups of pain or symptoms (*Pl. Dep.* 161:11-162:14, 167:13-168:18).[19] Accordingly, during the relevant period, Bryson did not have a "disability" for purposes of his ADA claims. *Parker v. Pulte Homes of Texas, L.P.*, 2011 WL 767182, at *8 (S.D. Tex. Feb. 25, 2011) (Rosenthal, J.) (granting summary judgment and explaining that "the term disability does not include temporary medical conditions, even if those conditions require extended leaves of absence from work.").

Assuming *arguendo* that Bryson could establish that he was a qualified individual with a disability, his accommodation claim would nevertheless fail because Bryson cannot identify any accommodation he requested based on a limitation known to FEI that was denied. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224-25 (5th Cir. 2011) (affirming summary judgment: Plaintiff was neither disabled nor could he show employer failed to provide any reasonable accommodation that was requested). Where, as here, the "disability, resulting limitations, and

---

[19] To the extent Bryson alleges that he had a medical condition that interfered with his ability to perform the essential functions of his job, summary judgment is still proper because he would not be a "qualified individual" for purposes of the ADA. "An individual who cannot perform the essential functions of the job even with reasonable accommodation is not 'qualified,' 42 U.S.C. § 12111(8) [and it is irrelevant] that the lack of qualification is due entirely to a disability." *Nadeau v. Echostar*, 2013 WL 5874279, at *14 (W.D. Tex. Oct. 30, 2013); *Smith v. Lattimore Materials Co.*, 287 F.Supp.2d 667, 672 (E.D. Tex. 2003) (requested accommodation of being excused from performance standards demanded of other employees is "neither effective nor reasonable").

necessary reasonable accommodations, are not open, obvious, and apparent . . . the initial burden rests primarily upon [Bryson] . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Griffin*, 661 F.3d at 224. Here, it is undisputed that: the <u>only</u> accommodation Bryson requested for his medical condition was to be given time off as needed (*Pl. Dep.* 147:2-10, 157:4-158:2); FEI granted that accommodation (*Pl. Dep.* 151:19-152:12); FEI never refused Bryson any time off when he requested it (*Pl. Dep.* 159:5-8); and there was <u>no</u> other accommodation Bryson requested that FEI did not provide (*Pl. Dep.* 205:23-206:6).[20] Because FEI made every accommodation Bryson requested for any known limitation, his ADA claim fails. *Johnson v. Parkwood Behav. Hlth. Sys*, 551 Fed. Appx. 753, 756-57 (5th Cir. Jan. 6, 2014) (summary judgment affirmed: employer made all accommodation requested and plaintiff did not inform employer of any other accommodations she needed).[21]

Although Bryson suggested in his deposition he was "under a lot of stress" and "asked

---

[20] Although Bryson claimed in his deposition that he wanted a stand-up desk to perform his work and to take more frequent breaks due to his "chronic pain" (*Pl. Dep.* 147:11-25), Bryson does not identify when or to whom he ever made this request (*Pl. Dep.* 152:19-153:5), and admits he never *submitted to FEI* any doctor's certification that he needed a stand-up desk as an accommodation (*Pl. Dep.* 152:19-154:25, 220:14-221:21). FEI cannot be held liable for not providing an accommodation if Bryson failed to request one. *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996) (affirming summary judgment: "it was necessary that Plaintiff not only make her disability known, 'but also any limitations resulting therefrom.'"); *Allen v. Babcock & Wilcox Tech. Servs*, 2013 WL 5570192, at *4 (N.D. Tex. Oct. 9, 2013) (granting summary judgment: Plaintiff did not point to any specific facts suggesting that she made any *limitations* of her disability known to Defendant). Moreover, Bryson admits he was permitted to stand up at his desk as needed (*Pl. Dep.* 279:1-11), which fully addressed his need to stand up and take more frequent breaks and thus he was provided a reasonable accommodation. *See EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009) ("The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation."). Even if Bryson requested such accommodations and was denied, there is no evidence that the proposed accommodations would have addressed his inability to perform at a satisfactory level. *See Crossley v. CSC Applied Technologies*, LLC, 2014 WL 2119156 at *2 (5th Cir. May 22, 2014) (affirming summary judgment: employee who suffered from PTSD was not "qualified individual" under the ADA where employee was unable to travel, which was an essential function of the job of an aircraft mechanic, and the indefinite leave she sought as an accommodation would not have addressed her inability to travel).

[21] Bryson also claims that sometime prior to being hired by FEI, he experienced a "head injury," and that he had headaches and difficulty concentrating from time-to-time, which affected his ability to perform his job effectively and timely. *Pl. Dep.* 212:8-213:4, 214:4-14. However, Bryson admits that an essential function of a Process Engineer requires concentration and attention to detail (*Pl. Dep.* 213:10-214:14). Thus, FEI would not have been under an obligation to accommodate by altering these essential functions. *Crossley*, 2014 WL 2119156 at *2 (employee who suffered from PTSD was not "qualified individual" under the ADA where employee was unable to travel, which was an essential function of the job of an aircraft mechanic). In any event, Bryson admits that he <u>never</u> told Coleman, Quiroz or Turner—nor does he claim he ever told anyone else at FEI—that he ever experienced a head injury or needed accommodations as a result (*Pl. Dep.* 213:5-17).

for help with [his] assignments," he admits that no doctor ever told him that, due to his gastric-related medical condition, he needed to get help with assignments, adjustments to his work, clearer instructions or any other accommodation other than needing to take time off as needed. *Pl. Dep.* 158:3-159:8. Even if Bryson had provided documentation in that regard, however, requesting "help with assignments" and "adjustments to his work" are not reasonable accommodations as a matter of law. An employer is not required "to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employee[s] to do so." *Luera v. Convergys Customer Mgmt. Grp., Inc.*, 2013 WL 6047563, at \*9 (S.D. Tex. Nov. 14, 2013) (Crane, J.) (granting summary judgment). Thus, FEI is entitled to summary judgment on Plaintiff's ADA accommodation claim.

**D.    FEI Is Entitled To Summary Judgment On Bryson's FMLA And ADA Discrimination And Retaliation Claims.**

**1.    Legal Standards For Bryson's Discrimination And Retaliation Claims**.

As a threshold matter, Bryson's FMLA discrimination and retaliation claims must fail because Bryson was not an "eligible employee" under the statute.[22] Similarly, Bryson's ADA claims must fail because he was not a "qualified individual with a disability" under the ADA.[23]

Assuming *arguendo* that Bryson can establish these two threshold requirements, since no direct evidence of discrimination and/or retaliation is offered, FEI's entitlement to summary judgment on Bryson's discrimination and retaliation claims under the FMLA and the ADA is governed by the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Paris v. Sanderson Farms, Inc.*, 542 Fed. Appx. 370, 374 (5th Cir.

---

[22] As explained fully in Section V.B., *supra*, Bryson was not an "eligible employee" under the FMLA because he was employed by FEI for *less than one year*. *See Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 Fed. Appx. 874, 882 (5th Cir. Dec. 21, 2010) (affirming summary judgment:  Plaintiff had no viable FMLA retaliation claim because Plaintiff was not entitled to FMLA leave).

[23] As explained fully in Section V.C., *supra*, Bryson did not have a "disability" under the ADA.  *See Amsel v. Tex. Water Dev. Bd.,* 464 Fed. Appx. 395, 401-02 (5th Cir. March 19, 2012) (affirming summary judgment on ADA discrimination claims because Plaintiff was not a "qualified individual" with a disability).

Oct. 18, 2013) (FMLA retaliation claims); *Owens v. Calhoun County School Dist.*, 546 Fed. Appx. 445, 448 (5th Cir. Oct. 8, 2013) (ADA claims). Under this standard, Bryson carries the initial burden of establishing a *prima facie* case of discrimination and/or retaliation and, if successful, the burden shifts to FEI to provide a legitimate, nondiscriminatory/nonretaliatory reason for the adverse employment action. *See Sanchez v. Dallas/Fort Worth Intern. Airport Bd.,* 438 Fed. Appx 343, 346 (5th Cir. Aug. 22, 2011). FEI is not required to convince the Court that it was actually motivated by the proffered reason(s); it need only raise a genuine issue of fact as to whether or not it discriminated or retaliated against Bryson. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). FEI's burden is easily satisfied because it is a burden "of production, not persuasion" and it need not involve a "credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). Once FEI meets its burden, Bryson must then show that the reason(s) provided were a pretext for discrimination and/or retaliation.[24] *See Sanchez,* 438 Fed. Appx at 346. Because (as shown below), FEI has articulated legitimate, nondiscriminatory/nonretaliatory reasons for all alleged adverse employment actions, Bryson must prove that <u>each</u> of FEI's proffered reasons is pretextual. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

> **2.   Most Of The Complained-of Allegations Are Not Adverse Employment Actions As A Matter of Law; Nor Has Bryson Identified Any Similarly-Situated Employee Who Replaced Him Or Was Treated More Favorably**.

Most of the work-related actions about which Bryson complains are not actionable adverse employment actions as a matter of law. In the retaliation context, adverse employment actions are only those "that would have been materially adverse to a reasonable employee. . . . [T]he employer's actions must be harmful to the point that they could well dissuade a reasonable

---

[24] Bryson cannot establish pretext by creating only a weak issue of fact as to whether FEI's reasons are untrue, and there is "abundant and uncontroverted independent evidence that no discrimination . . . occurred." *Reeves,* 530 U.S. at 148 (2000).

worker from making or supporting a charge of discrimination," *Allen v. Radio One of Texas II, L.L.C.*, 515 Fed. Appx 295, 302 (5th Cir. Feb. 26, 2013), or from exercising his rights under the FMLA, *Lushute v. La., Dep't of Soc. Servs.*, 2012 WL 1889684, at *2 (5th Cir. May 25, 2012).[25] The following complained-of actions are not adverse employment actions. Nor has Bryson identified any similarly-situated employees who replaced him or were treated more favorably.[26]

**Alleged Difficulty Communicating With/Understanding Supervisors:** Bryson's alleged difficulty communicating with and understanding his supervisors (*Pl. Dep.* 47:9-24, 113:24-114:9, 230:21-25) or the fact that instructions he received from his supervisors may have lacked clarity or turned out not to be true (*Pl. Dep.* 230:9-25; *Pl. Dep.* 109:8-21) are not adverse employment actions. *King v. Louisiana,* 294 Fed. Appx. 77, 85 (5th Cir. Sept. 23, 2008) ("unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment"); *Burlington Northern*, 548 U.S. at 68 ("petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making a charge of discrimination). In any event, Bryson has not identified any similarly-situated employees who were treated more favorably. *See, e.g., Pl. Dep.* 199:22-200:6 (admitting that all Process Engineers had to deal with changing instructions).[27]

**Alleged Heavier Workload And Condensed Schedules:** Bryson's allegations that he was given a heavier workload, had condensed deadlines, and was not given enough time to

---

[25] In the discrimination context, adverse employment actions consist only of actions that are "ultimate employment decisions" such as hiring, granting leave, discharging, promoting or compensating. *Jumbo v. Rodrigues*, 2013 WL 5703628, at *4-5 (S.D. Tex. Oct. 18, 2013) (Hoyt, J.). Adverse employment actions in the retaliation context constitute actions that "a reasonable employee would have found ... [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, (2006); *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (recognizing that *Breaux* remains controlling for adverse actions with respect to discrimination claims while *Burlington* imposes a slightly lower standard for retaliation claims).

[26] Similarly situated individuals must be "nearly identical" and outside the plaintiff's protected class. *Belcher v. Fluor Enterprises, Inc.*, 2013 WL 499858, at *6, n.4 (S.D. Tex. Feb. 8, 2013) (Ellison, J.).

[27] Bryson does not believe the managers were *intentionally* being unclear or difficult to communicate with due to his alleged disability or for taking leave (*Pl. Dep.* 47:9-24, 109:22-110:4; 114:10-117:7, 231:1-7) nor does he claim that Shah gave Bryson wrong instructions because of his disability or his requests for FMLA (*Pl. Dep.* 109:22-110:4).

complete his deliverables (*Pl. Dep.* 231:13-232:6) are not adverse employment actions. *Belcher, Inc.*, 2013 WL 499858, *6, n.4 (S.D. Tex. Feb. 8, 2013) (Ellison, J.) (cases cited therein). Nor has Bryson identified any similarly-situated employees who were treated more favorably. *See, e.g., Pl. Dep.* 172:5-24, 200:7-14, 232:7-24 (customary for Process Engineers to have condensed schedule and work under pressure); *Pl. Dep.* 62:8-14, 200:22-201:6, 232:25-233:8 (Bryson does not believe he was assigned more work or a shorter time frame than others).

**Alleged Rude Or Inappropriate Statements**: Bryson's allegation that (1) Quiroz responded to his questions by telling him she had already answered his questions (*Pl. Dep.* 95:23-97:17); (2) Williams asked when he would complete or make-up his work (*Pl. Dep.* 136:23-137:10); (3) Williams told Bryson that she had supervised cancer patients who had not taken off work (*Pl. Dep.* 135:24-136:19); (4) coworkers would ask "when are you going to finish this" (*Pl. Am. Pet.*, p. 4); and (5) other similar allegedly rude or inappropriate comments or statements—are not adverse employment actions as a matter of law. *See Burlington Northern*, 548 U.S. at 68 ("petty slights, minor annoyances, and simple lack of good manners"); *Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 485 (5th Cir. 2008) (rude treatment).[28]

**Transfers To Different Projects And Being Placed On "Overhead" Status**: Bryson's alleged transfers "from project to project" (*Pl. Am. Pet.*, p. 6) and his alleged placement on "overhead status" (*Pl. Am. Pet.* 5; *Pl. Dep.* 257:8-259:22)[29] are not adverse employment actions as a matter of law. *Harrison v. Corrections Corp. of America*, 476 Fed. Appx. 40, 45 (5th Cir.

---

[28] Additionally, "[s]tatements evince unlawful discrimination [or retaliation] only if the comments 'first, demonstrate discriminatory animus and, second, [are] made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker.'" *Ellini v. Ameriprise Fin., Inc.*, 881 F. Supp. 2d 813, 821 (S.D. Tex. 2012) (Ellison, J.). The alleged statements above in no way relate to Bryson's written reprimand or termination, which occurred months later. At best, they are "stray remarks," which are not evidence of discrimination or retaliation. *Hill v. New Alenco Windows, Ltd.*, 716 F. Supp. 2d 582, 602 n.8 (S.D. Tex. 2009) (Ellison, J.). Turner was the decisionmaker (*Turner Dec.* ¶ 13), and there is no evidence that any of them had influence or leverage over Turner's decision to reprimand or terminate Bryson.

[29] There was no such thing as "overhead status" at FEI; however, Bryson was assigned some job tasks that were not billed to FEI's client and thus was not directly revenue-generating (i.e., "overhead" time) (*Turner Dec.* ¶ 14).

May 9, 2012) ("Without record evidence to show [the transfer] offered less opportunities for promotion or salary increases, involved a greater likelihood of termination, or the like, [plaintiff] cannot show that a reasonable employee would have found the lateral transfer at the same salary to be materially adverse"); *Belcher*, 2013 WL 499858 at *6 (being assigned more difficult tasks is not actionable). Throughout his employment at FEI, Bryson remained a "Process Engineer," his core job functions did not change, and his pay and benefits never decreased as a result of any project assignment. *Turner Dec.* ¶¶ 4, 6, 10, 12. Bryson's assignments to different projects or to work on nonbilled matters, while maintaining the same pay, benefits and title, were nothing more than "purely lateral transfer[s]," which are not an adverse employment actions as a matter of law. *Munoz v. Seton Healthcare, Inc.*, 557 Fed. Appx. 314, 319 (5th Cir. Feb. 18, 2014). Bryson's mere "subjective preference" to work on a particular project does not make his transfer from one project to another "adverse." *Id.* Moreover, Bryson failed to identify any similarly-situated employee who replaced him or was treated more favorably. In any event, Turner transferred Bryson to multiple projects because, (1) due to Bryson's poor performance, Bryson's supervisors on the respective projects (and sometimes even FEI's client) wanted him transferred off their project; and (2) Turner wanted to give Bryson an opportunity to work with supervisors who had a strong track record of developing underperforming and inexperienced engineers (but no prior experience with Bryson) to give Bryson a fair opportunity to improve his performance. *Turner Dec.* ¶¶ 6, 10, 12. Bryson admits he has no basis to dispute Turner's honest belief that Bryson's poor performance warranted transfer to a different project. *Pl. Dep.* 130:21-131:3, 218:8-219:19, 237:20-238:10. Bryson admits he has no facts to support his belief that Turner was motivated by a desire to discriminate against him because of his disability or because of his requests for FMLA leave. *Pl. Dep.* 128:23-129:2. Nor does Bryson know what criteria FEI used to decide

who or how many engineers to assign or release from a particular project. *Pl. Dep.* 57:6-9.

Similarly, FEI assigned Bryson tasks that were not billed to FEI's client (the "overhead" status) because there was no available billable to work to which he could be assigned at that time and, due to his performance issues, project management was not confident that FEI's client would pay for Bryson's work if it was billed to the client. *Turner Dec.* ¶ 14. Bryson admits (1) he could not identify who asked him to charge his time to a non-client billing number (*Pl. Dep.* 233:9-23); (2) he did not know why FEI asked him to charge his time to an overhead billing number as opposed to a client billing number (*Pl. Dep.* 194:20-195:12, 195:17-20); (3) Bryson could not recall ever being told that his employment was more likely to be terminated because he was asked to bill his time to a non-client billing number (*Pl. Dep.* 196:13-19, 233:19-234:4); (4) and Bryson could not even explain what "overhead status" was (*Pl. Dep.* 259:23-260:13). Moreover, Bryson admits he had no idea what criteria FEI used to decide who or how many engineers to assign or release from a particular project. *Pl. Dep.* 57:6-9.

**Written Reprimand:** The written reprimand (*Pl. Dep.* 173:16-174:14; *Turner Dec.* ¶ 9; *Ex. 13*) was not an adverse employment action. *Jumbo v. Rodrigues*, 2013 WL 5703628, at *6-7 (S.D. Tex. Oct. 18, 2013) (Hoyt, J.) (disciplinary write-ups are not materially adverse employment actions for retaliation claims). Bryson failed to identify anyone similarly-situated who was not issued a written reprimand or otherwise treated more favorably. *See id.*, at 5-6.[30] Regarding his FMLA retaliation claim, Bryson admits he has no evidence to support his belief that Turner issued the reprimand *because of* his FMLA leave. *Pl. Dep.* 190:1-8. In any event,

---

[30] Regarding Bryson's ADA retaliation claim, Bryson clearly had not engaged in any "protected activity," as Bryson did not submit his final rebuttal statement to the reprimand until October 31, 2012 (*i.e.*, five days *after* receiving the reprimand). *Pl. Dep.* 228:22-229:7; *Ex. 14*. Regarding Bryson's FMLA retaliation claim, FEI will assume Bryson engaged in protected activity by applying for intermittent FMLA leave on October 3, 2012. But of course, "[t]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004).

Turner issued the written reprimand to Bryson because Bryson had yelled at Coleman (his supervisor on the Dow Alliance Project) during a performance coaching session in an inappropriate and insubordinate manner (in the presence of an FEI client and Bryson's coworkers); and based on the feedback Turner had received from multiple supervisors on several projects, Bryson's work performance and technical skills remained inadequate despite months of job coaching. *Turner Dec.*¶ 9; *Ex. 13*. Bryson has no evidence—other than his speculation and subjective belief—to rebut the legitimacy of Turner's decision to issue the written reprimand. Although Bryson disputes raising his voice at Coleman (*Pl. Dep.* 179:15-180:7), blames others for his performance deficiencies (*Ex. 13*, pp. 2-5), alleges that the reprimand was "exaggerated" (*Pl. Dep.* 177:10-178:8), and claims that Coleman wrote the reprimand (and Turner signed it) for discriminatory or retaliatory reasons due to his alleged medical condition or for taking FMLA leave (*Pl. Dep.* 47:9-18, 174:22-177:17)—Bryson simply has not raised a triable issue of fact on the issue of pretext: "The question is not whether [Turner] made an erroneous decision; it is whether the decision was made with discriminatory or retaliatory motive. *Wilson v. Exxon Mobil Corp.*, 2014 WL 3378323, at *4 (5th Cir. July 11, 2014). On this question, Bryson's deposition admissions are fatal: (1) Bryson **admits** has no facts to support his claim that Coleman recommended that Bryson be issued a reprimand *because of* his disability or *because of* his request for FMLA leave, as opposed to any other reason (*Pl. Dep.* 48:7-12); (2) Bryson **admits** that Coleman honestly believed Bryson's performance on the Dow Alliance Project was "nonexistent" (*Pl. Dep.* 48:13-49:22, 177:10-17, 186:5-14); (3) Bryson **admits** he has no evidence or basis to dispute Turner's honest belief that Bryson was performing poorly and that he had been insubordinate to Coleman (*Pl. Dep.* 189:11-190:8); and (4) Bryson **admits** that, from Turner's and Coleman's perspective, Bryson's performance issues and conduct were so

serious that his employment may be terminated if he did not improve his performance and/or if

he engaged in further acts of insubordination (*Pl. Dep.* 180:8-15, 181:17-24; *Ex. 13*, p. 1).[31]

### 3.    FEI Terminated Bryson for Legitimate, Nondiscriminatory Reasons And There Is No Evidence Of Pretext.

Even assuming Bryson could establish a *prima facie* case regarding his termination,

Turner made the decision to terminate Bryson for the legitimate, nondiscriminatory and

nonretaliatory reasons: (1) Turner received consistently negative feedback about Bryson's

performance from multiple supervisors on multiple projects; (2) despite receiving a written

reprimand for his performance and despite having several opportunities to work on different

projects with different supervisors who had a strong track record for developing inexperienced

and underperforming engineers, Bryson failed to improve his performance deficiencies; (3) there

was no other available project to which Bryson could be assigned; and (4) based on the feedback

Turner received, his personal engineering experience and his interactions with Bryson, Turner

honestly believed that Bryson lacked the technical knowledge, skills and competence to be an

effective Process Engineer at FEI. *Turner Dec.* ¶ 13. Bryson has no evidence—other than his

speculation and subjective belief—to rebut the legitimacy of Turner's decision to terminate his

employment.[32] To be sure, Bryson clearly disagrees that he had any performance issues (*Pl. Dep.*

55:22-25, 89:23-90:5, 104:6-106:19, 222:5-23, 223:19-224:7), but "[t]he relevant inquiry is not

whether [the employer's] assessment of [the employee] was accurate because 'even an incorrect

---

[31] To be sure, even before Bryson's insubordinate behavior towards Coleman (which triggered the reprimand), Turner—in consultation with Quiroz, Coleman and Williams, as well as Human Resources—had already been planning to issue Bryson a formal reprimand to address Bryson's continuing failure to improve his performance deficiencies. *Turner Dec.* ¶ 9.  The written reprimand likewise does not mention or even reference Bryson's medical condition or his absences from work. *Ex. 13*. And, after receiving the reprimand, Bryson requested and was approved for a second period of FMLA leave. *Moultrie Dec.* ¶ 13; *Ex. 4*.

[32] The three month period between Bryson's request for intermittent FMLA leave on October 3, 2012 or the submission of his written rebuttal on October 31, 2012 and his termination of employment on January 30, 2013 is insufficient to establish a causal connection. *Gudger v. CITGO Petroleum Co.*, 2013 WL 5526993, at *8 (S.D. Tex. Oct. 4, 2013) (Hoyt, J.) (citing *Amsel v. Texas Water Dev. Bd.*, 464 Fed. Appx. 395, 402 (5th Cir. Mar. 19, 2012) (holding that a time period greater than two months "is not, by itself, enough to show a causal connection based on temporal proximity alone")).

belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason." *Agoh v. Hyatt Corp.*, 992 F. Supp.2d 722, 746 (S.D. Tex. 2014) (Harmon, J.) (citations omitted); *Fuming Wu v. Texas A&M Univ. Sys.*, 2011 WL 6130921, at *10 (S.D. Tex. Dec. 8, 2011) (Hoyt, J.) (granting summary judgment and explaining that "[m]erely disagreeing with an employer's negative performance assessment is insufficient to show pretext.")

Bryson simply has not raised a triable issue of fact on the issue of pretext. Bryson's deposition admissions are fatal: (1) Bryson **admits** he has no facts to support his belief that Turner was motivated by any desire to discriminate against him because of his disability or his requests for FMLA leave (*Pl. Dep.* 128:23-129:2); (2) Bryson **admits** he has no basis to dispute Turner's honest belief that Bryson's performance warranted termination (*Pl. Dep.* 127:23-128:3); and (3) Bryson **admits** he has no basis to believe the performance feedback Turner relied on was in any way biased due to his disability or requests for FMLA (*Pl. Dep.* 130:14-131:3). Nor does Bryson ever recall Turner making a comment about his medical condition or his disability— negative or otherwise (*Pl. Dep.* 129:18-130:13). *See Mickey v. Texas Co-Op Extension*, 265 Fed. Appx. 177, 177 (5th Cir. Feb. 6, 2008) (affirming summary judgment:  good faith, but mistaken belief does not raise sufficient fact question on issue of pretext).

Although Bryson argues that Turner should not have relied on what other supervisors told him because their opinion was allegedly biased and Turner never worked directly with Bryson to see his work (*Pl. Dep.* 126:21-127:11), Bryson **admits** he does not know, and thus has no competent basis for disputing each of his supervisors' assessment of his performance.[33] And he **admits** that he has no evidence to dispute that these supervisors honestly believed his performance was deficient. Even if Bryson were correct that one or more of his supervisors gave

---

[33] *See, e.g., Pl. Dep.* 54:25-56:6 (Ellickal); *Pl. Dep.* 88:24-90:5 (Pierson), *Pl. Dep.* 97:6-17, 237:10-19 (Quiroz); *Pl Dep.* 103:3-9 (Sanders); *Pl. Dep.* 103:10-104:5 and 106:20-107:22 (Shah); *Pl. Dep.* 186:15-20 (Williams); *Pl. Dep.* 224:8-16 (Sutikno); and *Pl. Dep.* 246:11-15 (Fry).

Turner biased feedback, Turner's decision was based on feedback he received from multiple supervisors on multiple projects—virtually all of whom Bryson **admits** did not have any discriminatory animus towards him,[34] nor is there any evidence that any of these supervisors exercised influence or leverage over Turner's decision. *Coleman v. Jason Pharmaceuticals*, 540 Fed. Appx. 302, 305-06 (5th Cir. Sept. 17, 2013) (affirming summary judgment: speculation not enough to show influence or leverage). In any event, Turner's honest belief that Bryson's performance warranted termination was based, not only on the feedback he received and on his own personal engineering experience, but also his numerous interactions with Bryson over the previous several months about his performance deficiencies. *Turner Dec.* ¶ 13; *Holiday v. Commonwealth Brands, Inc.*, 483 Fed. Appx. 917, 921-22 (5th Cir. Aug. 13, 2012). Thus, FEI is entitled to summary judgment on Bryson's discrimination and retaliation claims relating to his termination.

## VI.   CONCLUSION

Based on the foregoing, FEI requests entry of summary judgment on all claims.

---

[34] *See Pl. Dep.* at 34:8-35:25 (Baca); 54:6-24 (Ellickal); 61:2-62:14 (Fry); 70:5-19 (King); 71:11-24 (Koppel); 72:22-73:9 (Krantz); 75:19-77:1 (Mehta); 80:24-81:13 (Meserole); 82:7-14 (Moore); 87:11-88:23 (Pierson); 94:8-96:8 (Quiroz); 100:16-101: 16 (Sanders); 108:16-110:2 (Shah); 112:22-113:17 (Sutikno); 118:12-120:17 (Tsai); 122:2-124:1 (Turini); 126:7-129:2 (Turner); 131:18-132:19 (Walker); 133:6-134:25 (B. Williams). Nor does Bryson claim that any Human Resources or Benefits representatives had any discriminatory or retaliatory *animus* against him. *See Pl. Dep.* at 37:12-38:6 (Brown); 66:5-19 (Johnson); 67:11-68:9 (Kachur); 73:10-24 (Lindstrom), 85:11-86:14 (Moultrie), 91:20-92:10 (Polite), 99:7-100:1 (Sakry).

Dated: August 29, 2014

Respectfully submitted,

BAKER HOSTETLER LLP

By:   /s/ Dennis P. Duffy
     Dennis P. Duffy, *attorney in charge*
     Texas Bar No.: 06168900
     Federal Bar No.: 10502
     Michael J. Lombardino, *of counsel*
     Texas Bar No.: 24070159
     Federal Bar No.: 1580053

811 Main Street, Suite 1100
Houston, Texas  77002
Phone: (713) 751-1600
Fax:  (713) 751-1717
dpduffy@bakerlaw.com
mlombardino@bakerlaw.com

ATTORNEYS FOR DEFENDANT
FLUOR ENTERPRISES, INC.

## CERTIFICATE OF SERVICE

     I hereby certify that on August 29, 2014, a true and correct copy of the foregoing was filed with the clerk of the court of the United States District Court for the Southern District of Texas and will be served on all counsel of record via electronic notification and/or certified mail, return receipt requested, on the following:

Peter Costea
Law Offices of Peter Costea
Three Riverway, Suite 1800
Houston, Texas 77056

     /s/ Michael J. Lombardino